J-A29027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE ADOPTION OF: K.A.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 760 WDA 2021 |

Appeal from the Decree Dated April 19, 2021
In the Court of Common Pleas of Warren County Orphans' Court at
No(s):  A.N. 13 of 2020

| | | |
|---|---|---|
| IN RE ADOPTION OF: C.A.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 761 WDA 2021 |

Appeal from the Decree Dated April 19, 2021
In the Court of Common Pleas of Warren County Orphans' Court at
No(s):  A.N. No. 12 of 2020

| | | |
|---|---|---|
| IN RE ADOPTION OF: D.R.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 762 WDA 2021 |

Appeal from the Decree Dated April 19, 2021
In the Court of Common Pleas of Warren County Orphans' Court at
No(s):  A.N. No. 11 of 2000

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: FEBRUARY 8, 2022**

C.T. ("Mother") appeals from the decrees dated April 19, 2021, which involuntarily terminated her parental rights to her sons, D.R.N. (born in July 2010), C.A.F. (born in March 2012), and K.A.F. (born in September 2017). We affirm.

We summarize the relevant facts and procedural history as follows. The children have separate fathers. T.J.K. is the father of D.R.N, while G.A.F. is the father of C.A.F. and K.A.F.[1] Warren County Children and Youth Services ("CYS") has had periods of involvement with this family dating back to 2011. N.T., 4/19/21, at 37. The agency provided services to Mother several times, with its most recent case being opened in 2018. *Id*. At that time, Mother, G.A.F., D.R.N., C.A.F., and K.A.F. resided together in a rural residence in Warren County. Mother and G.A.F. used methamphetamine together regularly until G.A.F.'s incarceration in March 2019. *Id*. at CYS Ex. 7. Numerous methamphetamine users and other people with criminal records and firearms came and went from the residence. *Id*.

In July 2019, the Pennsylvania State Police ("PSP") filed drug-related charges against Mother in Erie County after searching her car. *Id*. at CYS Ex.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The decree for each child also terminated the parental rights of the respective father. The fathers did not appeal or participate in Mother's appeal.

22. Several months later, PSP conducted a search of the family's residence and, on September 20, 2019, arrested Mother. The Commonwealth filed two sets of charges in Warren County against Mother at two different dockets. The first set of charges related to allegations that Mother trafficked drugs from the family's residence. *Id*. at CYS Ex. 21.[2] The second set of charges related to allegations that Mother sold drugs to an undercover agent at the home in May 2019. *Id*. at CYS Ex. 20.

Initially, CYS required Mother to make a family plan wherein her mother would supervise her interactions with D.R.N., C.A.F., and K.A.F. Soon thereafter, Mother became incarcerated. On October 2, 2019, CYS obtained an emergency custody authorization to remove D.R.N., C.A.F., and K.A.F. from Mother's care. *Id*. at CYS Ex. 2. Two days later, the Commonwealth filed a third set of charges against Mother in Warren County. This time, the Commonwealth alleged Mother attempted to use urine that was not her own during a urine drug screen in the Warren County jail. *Id*. at CYS Ex. 19. Mother was released from jail on unsecured bond on October 30, 2019, in order to receive cancer treatment.

---

[2] In addition to the drug-related charges, the Commonwealth charged Mother with endangering the welfare of children ("EWOC") based upon an officer's alleged observance of methamphetamine on Mother's bed within reach of D.R.N., C.A.F., and K.A.F., as well as allegations that she sold controlled substances out of the residence where she and the children resided. As discussed in footnote 3, *infra*, the Commonwealth later withdrew, *inter alia*, the EWOC charge.

An adjudicatory hearing began on October 25, 2019, and concluded on January 27, 2020, at which time the trial court adjudicated D.R.N., C.A.F., and K.A.F. dependent under 42 Pa.C.S. § 6302(1). In its findings, the trial court described various issues contributing to its finding of dependency. *Id*. at CYS Ex. 7. It noted Mother's continued methamphetamine use, including just six days before the January hearing, and her then-pending drug and EWOC charges. *Id*. It found that home conditions in the family's residence were deplorable, including a frequent lack of utilities and clutter in the home and yard. *Id*. The trial court also found Mother had neglected the children's routine and preventative health needs and she failed to ensure D.R.N. consistently received his prescribed mental health medication. *Id*. D.R.N. and C.A.F. had missed over twenty days of school, with their absences often unexcused. *Id*. When they did attend, they were dirty, sleepy, and inattentive. *Id*. Mother left the children with inappropriate caregivers, resulting in an incident where C.A.F. was found walking to school on a highway in twelve-degree weather. *Id*. Additionally, Mother did not follow the safety plan the agency set up after her September 2019 arrest. *Id*.

Since their placement, D.R.N. and C.A.F. had "done extremely well in school." *Id*. Mother acknowledged that her housing with a roommate at the time of the second hearing was not suitable for any of the children and that she was unable to care for them. *Id*.

The trial court ordered Mother to undergo drug and mental health evaluations and comply with all recommendations for treatment; restricted her from having adults in her home without disclosure to and approval by CYS; and only permitted her to visit with D.R.N., C.A.F., and K.A.F. under supervision and after a negative drug screen. *Id*.

In early September 2020, a federal grand jury indicted Mother, G.A.F., and other individuals based on allegations that they engaged in an array of crimes over the previous two years related to drug trafficking and associated activities, including from Mother's residence in Warren County. *Id*. at CYS Ex. 18. Mother was arrested and incarcerated on these charges in federal prison.[3]

In early October 2020, Mother was released on bail to undergo cancer treatment and because COVID-19 posed a high risk of complications for her health. Upon her release, she began residing in a duplex adjacent to her brother's home in Titusville, Pennsylvania.

Meanwhile, D.R.N., C.A.F., and K.A.F. remained under CYS's legal custody. In May 2020, C.A.F. and K.A.F. moved to a kinship home with their paternal aunt and uncle. They remained in this home, which is pre-adoptive, at the time of the termination hearing. D.R.N. initially resided in the home with his half-brothers. Due to behavioral difficulties between D.R.N. and

---

[3] Shortly thereafter, the Commonwealth withdrew some, but not all, of Mother's pending state charges because the federal indictment covered the same conduct. At the time of the termination hearing, Mother was still awaiting trial in her federal matter, with multiple state matters to follow.

C.A.F., the kinship family requested D.R.N.'s removal and D.R.N. moved to a youth shelter on February 18, 2021. D.R.N. requested that the agency explore another kinship home with a person he referred to as his godmother. As this person lived in Washington State, the agency began the process of placement pursuant to the Interstate Compact on the Placement of Children ("ICPC").

On November 9, 2020, CYS filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The trial court conducted a hearing on April 19, 2021. Cynthia K.D. Klenowski, Esquire, represented D.R.N., C.A.F., and K.A.F. and assured the court there was no conflict between their best and legal interests. N.T., 4/19/21, at 6-7. Mother's court-appointed counsel, Tyler A. Lindquist, Esquire, represented her at the hearing. As it related to Mother, CYS presented the testimony of its caseworker, Eric Melquist. It also called Mother as an adverse witness. In addition, CYS introduced, and the court admitted, the dependency records of and permanency plans for D.R.N., C.A.F., and K.A.F., Mother's various state and federal criminal records, and several social media posts by Mother. *Id*. at CYS Ex. 1-29. Mother testified in her own defense and presented the testimony of her mother and her ministry leader in Celebrate Recovery, a "Christ-centered 12-step recovery program" in which Mother participates. *Id*. at 134-35.

At the conclusion of the hearing, the trial court announced its determination that CYS met its burden of proof pursuant to 23 Pa.C.S.

§ 2511(a)(1), (2), (5), (8), and (b) and placed findings of fact on the record. *Id*. at 193-216. By decrees dated April 19, 2021, and recorded on April 20, 2021, the court involuntarily terminated Mother's parental rights to D.R.N., C.A.F., and K.A.F.

Mother filed notices of appeal in D.R.N., C.A.F., and K.A.F.'s cases on May 21, 2021. Based upon the related parties and issues in the cases, this Court *sua sponte* consolidated the cases for purposes of appeal.[4] Mother presents four issues for our review:

1. Whether the lower court abused its discretion by finding that the agency met its burden of clear and convincing evidence under 23 Pa. C.S.A. §2511(a)(1).

2. Whether the lower court abused its discretion by finding that the agency met its burden of clear and convincing evidence under 23 Pa. C.S.A. §2511(a)(2).

3. Whether the lower court abused its discretion by finding that the agency met its burden of clear and convincing evidence under 23 Pa. C.S.A. §2511(a)(5).

4. Whether the lower court abused its discretion by finding that the agency met its burden of clear and convincing evidence under 23 Pa. C.S.A. §2511(a)(8).

Mother's brief at 11 (capitalization altered; numbering supplied).[5]

_____

[4] The trial court complied with Pa.R.A.P. 1925. Mother's compliance with Rule 1925 is discussed at length *infra*.

[5] There are several deficiencies in Mother's brief upon which we could find waiver. For example, despite Rule 2173's clear instruction to number each page of the brief separately, Attorney Lindquist failed to do so. **See** Pa.R.A.P. 2173. He did not include a single citation to the record in violation of Pa.R.A.P.

Before addressing the merits of Mother's issues, we must first determine whether her appeals were timely filed. "It is well-established that timeliness is jurisdictional, as an untimely-filed appeal divests this Court of jurisdiction to hear the merits of the case." *Smithson v. Columbia Gas of PA/NiSource*, 264 A.3d 755, 759 (Pa.Super. 2021) (cleaned up). Pursuant to Pa.R.A.P. 903(a), a notice of appeal must be filed within thirty days of the order from which the appeal is taken. Mother's notices of appeal were filed thirty-one days after the trial court recorded the decrees in the dockets. At first blush, then, they appear to be untimely filed, and the trial court and CYS urge us to quash Mother's appeal.

To determine the timeliness of Mother's filings, we must first determine whether the trial court's recording of the decrees was synonymous with entering the decrees. Rule 4.6 of the Pennsylvania Orphans' Court Rules of Procedure requires an orphans' court clerk to give immediate written notice of an order terminating parental rights to counsel for the parties or to unrepresented parties directly. Pa.O.C.R. 4.6(a). It further mandates that the clerk note in the docket the date when it provided such notice. Pa.O.C.R. 4.6(b).

---

2119 and sticks to generic recitations of the law despite the requirements in our rules to develop arguments by discussing authorities. *See* Pa.R.A.P. 2117, 2119. Although we have muddled through Attorney Lindquist's failures to abide by our rules, the fact that they have not substantially impeded our appellate review is due to this Court's efforts, not Attorney Lindquist's.

Rule 4.6(b) is derived from Pennsylvania Rule of Civil Procedure 236, which has a similar mandatory notation requirement. Pa.O.C.R. 4.6, Note; *accord* Pa.R.C.P. 236(b). Our appellate rules explain that in civil matters, the "date of entry of an order . . . shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by [Rule] 236(b)." Pa.R.A.P. 108(b). Because Pa.O.C.R. 4.6(b) is akin to Pa.R.C.P. 236(b), we conclude that an order pursuant to orphans' court jurisdiction is entered, for purposes of Pa.R.A.P. 903(a), once a court official complies with Pa.O.C.R. 4.6.

Our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." *Frazier v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999). This holding is a "bright-line rule, to be interpreted strictly." *In re L.M.*, 923 A.2d 505, 509 (Pa.Super. 2007). The parties' actual notice of the order does not alleviate the effect of the clerk's failure to comply with the rule. *Frazier*, *supra*, at 115. When a clerk fails to make the required notation in the docket, this Court has found a breakdown of court operations and that the thirty-day appellate period has not started to run. *Carr v. Michuck*, 234 A.3d 797, 806 (Pa.Super. 2020).

In the instant case, the docket does not contain the notation required by Rule 4.6; it indicates only that the clerk recorded the decrees on April 20, 2021. On the back of the last page of the decrees in the certified record, the

words "ISSUED" and "DATE" are stamped in ink, with "Copies RJH CYS-CKDK HLB-TAL" in handwriting next to the former and "4-20-2021 SE" in handwriting next to the latter.

Even if the clerk intended this note to convey that the clerk provided notice of the decrees to counsel on the listed date, this note fails to satisfy Rule 4.6's mandate to note on the docket the date that notice was given. "The procedural requirements reflected in the rules serve to promote clarity, certainty and ease of determination, so that an appellate court will immediately know whether an appeal was perfected in a timely manner, thus eliminating the need for a case-by-case factual determination." **Frazier**, **supra**, at 115. Local practices using shorthand, abbreviations, initials, or the like do not satisfy the rule-based "obligation to note on the docket the date . . . notice was given." **Carr**, **supra**, at 805 (requiring a notation that provides this Court with "clarity and confidence" of the date the appellate clock started ticking); **see also Smithson**, **supra**, at 759-60 (rejecting note that was ambiguous as to whether the clerk provided immediate notice to the parties).

Accordingly, although Mother's notices of appeal were filed in the trial court thirty-two days after the decree was issued and thirty-one days after the decree was recorded, the breakdown in court operations means that the appeal period never began to run. As such, we do not quash Mother's appeals as untimely. **See Carr**, **supra**; **Smithson**, **supra**. Instead, we "will regard as done which ought to have been done" and treat the appeals as timely filed,

*i.e.*, as if the clerk inscribed the notation required by Rule 4.6. ***Commonwealth v. Carter***, 122 A.3d 388, 391 (Pa.Super. 2015).

Nonetheless, before we proceed to the merits, we have another preliminary matter to address. Since this is a children's fast track appeal, Mother was required to file contemporaneously concise statements of errors complained of on appeal pursuant to Pennsylvania Rules of Appellate Procedure 905(a)(2) and 1925(a)(2)(i) and (b). Mother failed to do so, which rendered her notices of appeal defective. ***See In re K.T.E.L.***, 983 A.2d 745, 747 (Pa.Super. 2009) (holding that "the failure of an appellant in a children's fast track case to file contemporaneously a concise statement with the notice of appeal pursuant to rules 905(a)(2) and 1925(a)(2)" does not divest this Court of jurisdiction, but "will result in a defective notice of appeal.").

In considering the disposition of Mother's defective notices of appeal, we bear in mind that we should impose "[t]he extreme action of dismissal . . . sparingly." ***Id***. Instead, we consider on a "case by case basis" whether there has been "substantial compliance" with the rules and prejudice to the other parties. ***Id***. We also pay due respect to the "harshness of the penalty" compared to the "substantive rights involved." ***Stout v. Universal Underwriters Ins. Co.***, 421 A.2d 1047, 1049 (Pa. 1980); ***see also In re Adoption of C.M.***, 255 A.3d 343, 362 (Pa. 2021) (acknowledging the "solemn reality that a decree terminating parental rights is widely regarded as the civil

law equivalent to the death penalty, forever obliterating the fundamental legal relationships between parent and child").

Ultimately, Attorney Lindquist filed concise statements in each case.[6] Neither CYS nor D.R.N., C.A.F., and K.A.F. have alleged any prejudice from the delay. The trial court, which originally had filed an opinion in support of quashing the appeals as untimely filed, subsequently issued a new opinion outlining the reasons for the decrees. **See generally** Trial Court Opinion,

_____

[6] Despite the responsibility for compliance with the appellate rules falling squarely upon counsel, Attorney Lindquist's substantial compliance with Rule 1925 only manifested after an operose process involving efforts by this Court's staff, a remand, and orders by this Court and the trial court. To wit, this Court contacted Attorney Lindquist five times between June 11 and July 6, 2021, regarding his failure to comply with Pa.R.A.P. 1925. **See** Order, 7/6/2021, at 1. Despite assuring this Court on two different occasions that he would send the concise statements promptly, Attorney Lindquist did not do so. **Id**. In light of Attorney Lindquist's hollow promises, on July 6, 2021, this Court retained jurisdiction but remanded the case to the trial court for a determination of whether Attorney Lindquist had abandoned his client. **Id**. The following day, both the trial court and this Court ordered counsel to file concise statements by July 16, 2021. Counsel complied. For reasons that are unclear, a concise statement did not appear in K.A.F.'s docket. Upon request from this Court, Attorney Lindquist corrected this omission and the trial court certified a supplemental record including the concise statement as to K.A.F.

Furthermore, Attorney Lindquist also failed to file timely a docketing statement with this Court pursuant to Pa.R.A.P. 3517. This Court twice ordered Attorney Lindquist to comply before Attorney Lindquist finally filed a docketing statement seventy days after the original deadline. Finally, Attorney Lindquist filed Mother's brief and reproduced record late in violation of Pa.R.A.P. 2185(2)(i) and 2186(a)(1). As discussed *supra*, the brief did not comply with multiple appellate rules. We remind counsel that his client is entitled to effective assistance of counsel. **See Interest of I.M.S.**, ___ A.3d ___, 2021 PA Super 248 (filed December 15, 2021). If counsel is unable to comply with the most basic demands of our appellate rules, he should not accept appointments to represent clients in such serious matters.

6/15/21; Trial Court Opinion, 7/20/21. In light of counsel's eventual substantial compliance, the lack of prejudice, and the substantial rights at stake, we decline to dismiss Mother's appeals. ***See In re K.T.E.L.***, ***supra***.

We may now reach the merits of Mother's issues on appeal, all of which challenge the trial court's finding that CYS met its burden to establish grounds for termination under various subsections of §2511(a). We consider these issues mindful of our well-settled standard of review. "In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence." ***In re Adoption of C.M.***, ***supra***, at 358.

When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. ***Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." ***In re Adoption of L.A.K.***, ___ A.3d ___, 2021 WL 6071745, at *7 (Pa. filed December 23, 2021). "[A]n abuse of discretion does not result merely because the reviewing court might have reached a different conclusion" or "the facts could support an opposite result." ***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012). Instead, an appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id***. at 826.

This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings. *Interest of S.K.L.R.*, *supra*, at 1123-24.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental "right to make decisions concerning the care, custody, and control" of his or her child with the "child's essential needs for a parent's care, protection, and support." *In re Adoption of C.M.*, *supra*, at 358. Termination of parental rights has "significant and permanent consequences for both the parent and child." *In re Adoption of L.A.K.*, *supra*, at *7. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Adoption of C.M.*, *supra*, at 359 (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by §2511 of the Adoption Act. "Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination[.]" *In re Adoption of C.M.*, *supra*, at 359; *see also* 23 Pa.C.S. § 2511(a)(1)-(11). Under §2511(a), the trial court must focus on the parent's conduct and not use a "balancing or best interest approach" between the parent and other caregivers "to determine whether the statutory prerequisites" are met.

- 14 -

***Interest of L.W.***, \_\_\_ A.3d \_\_\_, 2021 PA Super 247, at \*5 n.6 (filed December 15, 2021). If the trial court determines the petitioner established grounds for termination under §2511(a) by clear and convincing evidence, the court then must assess the petition under §2511(b). ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). Under that subsection, the court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b).

In this case, the trial court terminated Mother's parental rights pursuant to §2511(a)(1), (2), (5), (8), and (b). We need only agree with the trial court as to any one subsection of §2511(a), as well as §2511(b), to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We focus our analysis on §2511(a)(8) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . . .
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings,

income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

In order to satisfy §2511(a)(8), the petitioner must show three components: (1) that the child has been removed from the care of the parent for at least twelve months; (2) that the conditions which led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. *In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa.Super. 2018). This subsection does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the child. *In re M.A.B.*, 166 A.3d 434, 446 (Pa.Super. 2017). In fact, the Adoption Act prohibits the court from considering, as part of a §2511(a)(8) analysis, "any efforts by the parent to remedy the conditions described [in the petition] which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b). "[T]he relevant inquiry" regarding the second prong "is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009).

This Court has recognized "that the application of [§2511](a)(8) may seem harsh when the parent has begun to make progress toward resolving

- 16 -

the problems that had led to the removal of her children." ***In re Adoption***

***of R.J.S.***, 901 A.2d 502, 513 (Pa.Super. 2006).

> However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen . . . months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

***Id***.

With our standard of review and these guiding principles in mind, we turn to Mother's argument. Mother recognizes her role in creating the conditions that underlie this case but she contends that she has progressed toward rectifying these issues. Mother's brief at 13, 15, 19. Specifically, she cites her negative tests of illegal substances, her suitable housing without roommates, and her steady attendance at drug and alcohol treatment up to six days a week when she was not incarcerated. ***Id***. She also emphasizes her regular attendance at visits with D.R.N., C.A.F., and K.A.F. when she is not in prison. ***Id***.

Nevertheless, Mother concedes "the family is not entirely prepared for reunification" and "the conditions may still exist." ***Id***. at 17-18. Mother's brief is somewhat vague as to which conditions are still outstanding, but at one point in her brief Mother posits that the only condition she did not eliminate

- 17 -

was her pending criminal charges. *Id*. at 15. However, she argues the trial court should not have considered those charges because she is presumed innocent under the United States constitution until proven guilty. *Id*. at 15.

In defending its decision to terminate Mother's parental rights under §2511(a)(8), the trial court found that the conditions that led to the removal and placement of the children continue to exist today. While Mother visited D.R.N., C.A.F., and K.A.F., secured her own housing, and "made a concerted effort to remedy her drug and alcohol issues by actively engaging in multiple forms of treatment[,]" Mother remains on house arrest awaiting trial under strict conditions from her federal parole officer. Trial Court Opinion, 7/20/21, at 9, 10-11. For example, she cannot go into the community with D.R.N., C.A.F., and K.A.F. during visits unless her parole officer grants her permission. *Id*. at 9. She has pending federal charges with an unknown trial date, followed by separate pending state charges. *Id*. She is not employed despite her ability to work part-time while on house arrest. *Id*. She only sees D.R.N., C.A.F., and K.A.F. for two hours a month at supervised visits. *Id*. She has minimal involvement with the children's medical needs, only attending appointments that are arranged by CYS and the kinship caregivers "when she could" based upon her house arrest and health issues. *Id*. at 8. She is not involved with their education. *Id*.

In the trial court's view, Mother's limited time with D.R.N., C.A.F., and K.A.F. means she is seeing them, not parenting them. *Id*. at 9. The trial

court also emphasized Mother's "likely incarceration" and her admission that she did not think it was best for D.R.N., C.A.F., and K.A.F. for her to be in their lives only to be removed again upon her incarceration. *Id*. at 10-11. In the findings the trial court placed on the record after the hearing, it also noted that Mother was "early on in recovery" and her "progress in our three review hearings wasn't ideal." N.T., 4/19/21, at 202, 208-09.

In sum, the trial court determined that Mother "is willing to put in the effort to make herself better for [the c]hildren," but "she is not able to provide for their daily needs and the reality of her current and pending criminal charges serve as a major roadblock in her ability to be a meaningful parent to [the c]hildren." Trial Court Opinion, 7/20/21, at 11. Accordingly, the trial court concluded "the conditions that led to the removal and placement of Children continue to exist today." *Id*. at 12.

There is no dispute D.R.N., C.A.F., and K.A.F. have been removed from Mother's care longer than the one-year period required by the first prong of §2511(a)(8). Regarding the second requirement, the continued existence of the conditions which led to the removal or placement, there is no doubt that the trial court relied heavily on Mother's unresolved legal troubles to find CYS established grounds under §2511(a)(8). *See* Trial Court Opinion, 7/20/21, at 11-12. We agree with Mother that her pending criminal charges cannot serve as proof that she in fact engaged in drug trafficking while D.R.N., C.A.F., and

K.A.F. were in the home.[7] However, the trial court focused on more than just the alleged activities and their attendant dangers. It relied upon the current, actual restrictions Mother faced in the criminal justice system, such as her need for approval from her parole officer to see D.R.N., C.A.F., and K.A.F. at CYS-supervised visits. *Id*. at 7-12. It also relied upon the potential restrictions she might face upon a conviction, going as far as to find that "Mother will likely receive a lengthy prison sentence." *Id*. at 11.

We find *In re C.B.*, 230 A.3d 341 (Pa.Super. 2020) to be instructive. In that case, a child welfare agency removed a young infant following physical abuse by her father and the failure of both parents to seek medical care. The child's mother was charged with crimes of omission based upon this failure. *Id*. at 344. The agency moved to terminate the mother's parental rights while charges were still pending. *Id*. at 350. Following a hearing, the trial court denied the petition, finding the agency failed to prove grounds to terminate the mother's rights under any of the subsections of §2511(a). *Id*. at 346.

The agency appealed. Relevant to our purposes, this Court examined whether the trial court properly found the conditions which led to the child's

---

[7] Nevertheless, the certified record is not devoid of evidence concerning Mother's suspicious activities. The caseworker testified without objection that in September and October 2019, it was difficult for a CYS caseworker to get into the house and there were "numerous individuals coming and going" and "people with guns." N.T., 4/19/21, at 34. Additionally, CYS introduced a social media post from Mother's Facebook account wherein she described being addicted to "the money the drug made us" and that she "dealt to support [her] kids." *Id*. at CYS Ex. 26.

removal had been resolved pursuant to §2511(a)(8). The specific reasons the agency removed the child were the father's admitted abuse and both parents' failure to seek immediate medical attention for the child. *Id*. at 349. During the child's dependency, the mother completed a parenting program, engaged in drug and alcohol treatment, and regularly visited with the child. *Id*. at 345. Nevertheless, the agency insisted the mother's housing conditions, employment status, and contact with the father were of concern to the agency. *Id*. at 351. The trial court found the agency did not introduce credible evidence why these concerns supported termination of parental rights, particularly because an agency caseworker admitted that if the mother's charges were resolved in her favor, the agency might consider reunification. *Id*. This Court agreed with the trial court, noting that while such concerns could support termination in general, they were not the factors that led to the removal and placement of the child and therefore could not support the analysis under §2511(a)(8). *Id*.

The only condition at issue, then, was the mother's pending criminal charges.[8] The trial court found that the pending charges, alone, could not support terminating the mother's parental rights. Once again, this Court agreed, holding "[e]vidence of a parent's pending criminal charges, in itself,

---

[8] The charges were no longer pending by the time the record closed; the mother pled guilty and received a sentence of two years' probation. *In re C.B.*, 230 A.3d 341, 350 n.6 (Pa.Super. 2020).

does not justify termination of parental rights under either Section 2511(a)(5) or Section 2511(a)(8)." *Id*. at 352. Citing *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) for the proposition that evidence of incarceration alone is not enough to support termination of parental rights, this Court concluded that neither is evidence of a pending charge. *Id*.

This Court noted that "the record supports the trial court's determination that [the m]other complied with [the agency's] requirements for reunification and maintained a relationship with [the child], albeit constrained by fully supervised visitation, during the pendency of her criminal charges." *Id*. at 353. The agency failed to present evidence that the mother's conduct would reoccur or that the mother failed to take responsibility for the actions and omissions that led to the charges. *Id*. (noting that adjudication of criminal guilt is not necessary to assess such things). Therefore, this Court affirmed the trial court's denial of the termination petition.

Although it is instructive to the instant case, we conclude *In re C.B.* does not require reversal. In *In re C.B.*, once the trial court set aside later-arising conditions from its analysis, it was faced with only one condition. This Court declared the circumstances in *In re C.B.* to be unique because it viewed that condition (*i.e.*, the mother's failure to obtain medical care for her child after the father's abuse) as "episodic" and comprised of "single occurrences . . . that were not ongoing." *In re C.B.*, *supra*, at 351 n.8.

In the instant case, however, "the conditions which led to the removal or placement of the child" are not confined to one isolated incident. This Court has interpreted the phrase the "conditions which led to the removal or placement of the child" in §2511(a)(8) in a broad fashion. **See In re C.L.G.**, 956 A.2d 999, 1006 (Pa.Super. 2008) (*en banc*) (holding conditions continued to exist because drug-related criminal conviction and incarceration were derived from "drug issues," regardless of whether the parent was still using drugs). While the specific event that caused removal was Mother's incarceration, the conditions leading to the removal involved her "drug usage, interaction [with] others using methamphetamine, the neglect that befell the boys because . . . their parents were more focused on the methamphetamine than the health, safety[,] and welfare of the boys." N.T., 4/19/21, at 207-08.

Regarding Mother's drug use, the trial court found, and the record supports, that Mother's progress with resolving her addiction largely came after she received notice of the filing of the termination of parental rights petition. N.T., 4/19/21, at 209-10. At the first permanency review hearing, the trial court found Mother had made no progress because Mother admitted that police found marijuana in her home and she had not obtained a drug and alcohol evaluation or treatment. *Id*. at 209-10, CYS Ex. 7. During the second review hearing, the trial court found she made minimal progress, as she still was not in drug and alcohol treatment and was living with G.A.F. alongside random people involved in her drug-related criminal cases. *Id*. Mother did

not obtain an evaluation until August 2020, almost a full year after CYS removed D.R.N., C.A.F., and K.A.F. from her care. *Id*. At the time CYS filed the termination petition, she had not begun actual treatment; she only began treatment in October 2021. *Id*. Mother's drug screens were mostly negative, but all came under the supervision of incarceration or parole. *Id*.

Given her late progress and longstanding addiction, we discern no abuse of discretion in the trial court's recognition that the bulk of her progress came after the petition was filed. In addition to her pending criminal charges, it remains to be seen whether she will be able to maintain her sobriety long-term. In short, reunification was not imminent. *In re I.J.*, *supra*, at 5. Moreover, the Adoption Act expressly directs the trial court not to consider any efforts to remedy the conditions relevant to this subsection which are first initiated after notice of the filing of the petition. 23 Pa.C.S. § 2511(b); *In re Adoption of C.J.P.*, 114 A.3d 1046, 1053 (Pa.Super. 2015) (holding the trial court properly did not consider a parent's resumption of addiction treatment after she received notice of the petition).

The third part of the §2511(a)(8) analysis is whether "termination of parental rights would best serve the needs and welfare of the child." 23 Pa.C.S. § 2511(a)(8). "Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent." *In re D.A.T.*, 91 A.3d 197, 205 (Pa.Super. 2014). The analysis under the third part of §2511(a)(8) is similar to §2511(b), but because of its placement in

§2511(a), they are distinct analyses. **See In re C.L.G.**, **supra**, at 1009 ("[W]e are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the 'needs and welfare' of [the child], as proscribed by Section 2511(b)[.]").

Regarding the third prong of §2511(a)(8), Mother argues that termination does not meet D.R.N., C.A.F., and K.A.F.'s needs and welfare. She criticizes CYS for considering placing D.R.N. with a caregiver across the country, asserting that despite D.R.N.'s assertions and preference, the caregiver is not really D.R.N.'s godmother and it would "tear" him away from his siblings. Mother's brief at 18-19. She also focuses on what she argues is a "strong bond" between her and D.R.N., C.A.F., and K.A.F. based on their "regular, appropriate, productive contact." **Id**.

As to Mother's argument concerning the potential of placing D.R.N. with a caregiver far away, thereby geographically separating the siblings, we observe that this Court has held previously that a termination hearing is not "the proper stage to inquire into the best adoptive alternative" for a child. **In re Adoption of G.R.L.**, 26 A.3d 1124, 1130 (Pa.Super. 2011). Once grounds are satisfied, the purpose of a needs and welfare inquiry is to determine whether termination of parental rights serves a child's needs and welfare, not to resolve which specific adoptive resource may adopt the child. **See id**. (affirming decree terminating parental rights despite parents' arguments that

the children's grandfather could care for the children in lieu of foster care or adopt the children).

As to Mother's argument regarding the bond she shares with D.R.N., C.A.F., and K.A.F., the trial court found she shares a bond with D.R.N., C.A.F., and K.A.F. and they are happy to see Mother and are comfortable with her at visits. N.T., 4/19/21, at 211; Trial Court Opinion, 7/20/21, at 11-13. The trial court expressed it had no doubt that D.R.N., C.A.F., and K.A.F. love Mother and enjoy spending time with her. N.T., 4/19/21, at 211; Trial Court Opinion, 7/20/21, at 11-13. Nevertheless, it found that the two hours per month D.R.N., C.A.F., and K.A.F. spend with her "do not make up for the uncertainty that [the c]hildren are presently facing" with Mother's circumstances. Trial Court Opinion, 7/20/21, at 13. The court noted that as a result of Mother's conduct during her time parenting D.R.N., C.A.F., and K.A.F., the children did not experience a sense of security or permanency. N.T., 4/19/21, at 211; Trial Court Opinion, 7/20/21, at 11-13. Now in care, finally the children's medical, dental, and educational needs have been met consistently. N.T., 4/19/21, at 211; Trial Court Opinion, 7/20/21, at 11-13.

The court determined D.R.N., C.A.F., and K.A.F. have changed in the nineteen months they have been out of Mother's care. N.T., 4/19/21, at 201. K.A.F. and C.A.F. have bonded with their paternal aunt and uncle and rely on them to meet their needs. *Id*. at 51-52, 201. The trial court acknowledged D.R.N., C.A.F., and K.A.F. would experience harm by terminating Mother's

parental rights but concluded that such harm "would be outweighed by permanency with caring, sober, consistent parents." *Id*. at 213. The court noted that D.R.N. was not in a pre-adoptive home and had some behavioral issues that could make finding an appropriate home more of a challenge, but the trial court concluded it was a likely outcome for D.R.N., whether it was with his godmother or another option. *Id*. at 215. Given all of the "question marks," the trial court concluded prioritizing the safety and security needs of D.R.N., C.A.F., and K.A.F. over the disruption of their bond with Mother was "of more importance at this crucial time in their young lives." *Id*.; Trial Court Opinion, 7/20/21, at 13.

We discern no abuse of discretion in the trial court's findings and conclusion. They are supported by the record. Additionally, Mother conceded she did not think it was "best" for D.R.N., C.A.F., and K.A.F. to return to her care at the time of the termination hearing based on the uncertainty of whether she would be removed from their lives again upon conviction and incarceration. N.T., 4/19/21, at 125. She planned to place them with her family if she was incarcerated and wished to be an "active part" of their lives. *Id*. at 121, 125.

We find no abuse of discretion in the trial court's decision to prioritize establishing security and stability for D.R.N., C.A.F., and K.A.F., both in an emotional sense and a practical sense of their development, health, and education, over prioritizing their bond with Mother, which has been maintained

not through daily care but through short, supervised visits. The court noted that what best serves the needs and welfare of D.R.N., C.A.F., and K.A.F. is a difficult task because no one has a "crystal ball." N.T., 4/19/21, at 215. However, because the trial court's findings and conclusions are supported by the record, we defer to the trial court's decision and conclude it properly found that CYS met its burden under all three portions of §2511(a)(8).

Once the trial court has determined that the petitioner met its burden under §2511(a), it then must shift its focus to the child. *T.S.M.*, *supra*, at 628. To that end, the Adoption Act provides that the court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.§ 2511(b). "The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability." *T.S.M.*, *supra*, at 628 (citation and quotation marks omitted). Our Supreme Court has made clear that §2511(b) requires the trial court to consider the nature and status of the bond between a parent and a child. *In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1993). Existence of a bond does not necessarily result in denial of a termination petition, but the court must examine the effect on the child of severing such a bon. *T.S.M.*, *supra*, at 628. "When examining the effect upon a child of severing a bond, courts must examine whether termination of parental rights will destroy a 'necessary and beneficial relationship,' thereby causing a child to suffer

'extreme emotional consequences.'" *In re Adoption of J.N.M.*, *supra*, at 944 (quoting *E.M.*, *supra*, at 484-85).

"While a parent's emotional bond with his or her child is a major aspect of the Subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re M.M.*, 106 A.3d 114, 118 (Pa.Super. 2014). "In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*. In determining needs and welfare, the court may properly consider the effect of the parent's conduct upon the child and consider "whether a parent is capable of providing for a child's safety and security or whether such needs can be better met by terminating a parent's parental rights." *Interest of L.W.*, *supra*, at *5.

Mother failed to raise any challenge relating to §2511(b) in her concise statement or in the statement of questions involved in her. Therefore, she has waived any claim pursuant to that subsection. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa.Super. 2017) ("[I]t is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived."). Even if she did raise such a claim, we would affirm the trial court's determination that CYS

met its burden of establishing termination under §2511(b) for the same reasons as discussed *supra* regarding the third prong of §2511(a)(8).

Accordingly, based on the foregoing, we affirm the decree terminating Mother's parental rights to D.R.N., C.A.F., and K.A.F.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2022