J-S33032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.-G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.M.-E., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1257 EDA 2022 |

Appeal from the Decree Entered April 12, 2022
In the Court of Common Pleas of Monroe County Orphans' Court at
No(s):  2022-0007

BEFORE:  KUNSELMAN, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED DECEMBER 13, 2022**

J.M.-E ("Father") appeals from the decree involuntarily terminating his parental rights to his daughter, A.M.-G. ("Child"), born in September 2020.[1] After careful review, we vacate and remand for further proceedings.

The relevant facts and procedural history are as follows:  Mother was criminally charged in New Jersey based on allegations that, in May 2018, she had severely harmed her stepdaughter—who was Father's daughter—who was five years old at the time.  ***See*** N.T., 4/12/22, at 8-9, 48; ***see also id***. at 37, Exhibit 20.  As a result of Mother's alleged physical abuse, that child is wheelchair-bound and in a long-term care facility.  ***See id***. at 8-9.  The New Jersey Division of Child Protection and Permanency found the allegations of abuse against Mother were substantiated, as were allegations that Father's

---

[1] On April 12, 2022, the trial court also terminated the parental rights of C.G. ("Mother"), Child's biological mother.  Mother did not appeal.

neglect posed a "serious risk of harm or damage." **See id**. at 9; **see also id**. at 37, Exhibit 15.[2]

Monroe County Children and Youth Services ("CYS") received a referral in September 2020, just before Child's birth, that Mother tested positive for Suboxone and that she had the aforementioned criminal charges in New Jersey pending against her. **See id.** at 9-10. The referral also stated that, in April 2020, Mother had voluntarily surrendered her rights to six children and Father had voluntarily surrendered his rights to two children. **See id.** at 10, 47-48.

Following Child's birth, the hospital discharged Mother, but Child remained in the hospital for monitoring for withdrawal symptoms. **See id**. at 11. On September 28, 2020, CYS received documentation detailing Mother's alleged abuse of her stepdaughter—Father's daughter—in New Jersey. **See id**. at 11-12. On that same date, the trial court granted the petition of CYS for emergency protective custody.

The trial court adjudicated Child dependent on October 6, 2020. **See id**. at 14. On October 8, 2020, CYS caseworker, Kelley Koerner ("Ms. Koerner"), met with Father and Mother, and they developed a family service plan. **See id**. at 14. Mother indicated to Ms. Koerner that she wanted to breastfeed while taking Suboxone. **See id**. On October 27, 2020, Child's

---

[2] The New Jersey criminal charges against Mother were still pending at the time of the termination hearing. **See** N.T., 4/12/2022, at 35.

foster mother observed stomach and behavioral issues with Child following visitation with her parents. *See id*. This continued into November; but when Child switched to infant formula, her stomach issues ceased. *See id*. at 15.

Father completed a parenting class and regularly visited Child. *See* N.T., 4/12/22, at 10, 23, 29-30. However, in April 2021, Ms. Koerner also requested that Father attend "non-offender counseling," provide income information, and make arrangements for Mother to vacate the residence because of the abuse allegations against her. *See id*. at 21. Father told Ms. Koerner he would attend counseling but informed her Mother would not be moving out unless Child was "right about to be placed in the home." *Id*. Father also failed to provide income information. *See id*. at 22. By November 2021, Father had still failed to have Mother move out of the residence, nor had he completed counseling. *See id*. at 27-28.[3] Father additionally tested positive for THC. *See id*. at 28. By January 7, 2022, Father had missed three or four visits. *See id*. at 30. Ms. Koerner texted Father on January 19, 2022, in addition to mailing him a letter, to inform him of a goal change hearing on January 27, 2022. *See id*. at 30-31. Father did not attend the hearing. *See id*. at 31. Following the hearing, the trial court changed Child's goal to adoption. *See id*.

---

[3] Father indicated to Ms. Koerner that he was on a waiting list for a Spanish language counseling program. *See* N.T., 4/12/22, at 41. Father is not fluent in the English language, though Ms. Koerner opined that "he understands it enough." *Id*. at 45.

Ms. Koerner attempted to contact Mother and Father at their residence in mid-February, but no one answered, nor did either parent respond to her text message. *See id*. at 32-33. Ms. Koerner continued her outreach in March 2022, and on March 24, following a visit with Child, Father met with Ms. Koerner; when Ms. Koerner asked Father whether he wanted to be reunified with Child, Father responded that "all communication must go through [Mother], and that he couldn't answer any of my questions." *Id*. at 34-35. Ms. Koerner attempted to communicate with Father again on March 29, 2022 but was unsuccessful. *See id*. at 35. CYS never received confirmation from Father that Mother vacated the residence. *See id.* at 20.

CYS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The trial court conducted an evidentiary hearing on the petition on April 12, 2022.[4] Father, who was represented by counsel, did not appear. CYS offered the testimony of, *inter alia*, its case workers, and it introduced into evidence, without objection, a voluminous amount of visitation notes detailing observations by CYS staff of the parents' visits with Child. *See* N.T., 4/12/22, at 36, CYS Exhibit 12. At the conclusion of the April 12, 2022 hearing, the

_____

[4] Child was approximately eighteen months old at the time of the hearing. A guardian *ad litem* represented Child's best interests at the hearing. Insofar as Child's legal interests were incapable of ascertainment due to her young age, it was unnecessary for the trial court to appoint separate legal counsel to represent Child's legal interests. *See In re T.S.*, 192 A.3d 1080, 1092-1093 (Pa. 2018).

trial court granted CYS's petition to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Father filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.[5]

On appeal, Father presents the following issue for our review: "Whether the court erred in finding that [CYS] proved the elements of 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) through clear and convincing evidence?" Father's Brief at 4 (unnecessary capitalization omitted).

We review involuntary termination orders for an abuse of discretion, which requires an error of law or a showing of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *See In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). This Court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *See Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021); *see also In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021).

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S.A. §§ 2101-2938. Subsection

---

[5] On September 21, 2022, this Court remanded this case to the trial court for that court to comply with Pa.R.A.P. 1925(a) by providing a detailed explanation for its finding, pursuant to 23 Pa.C.S.A. § 2511(b), that termination of parental rights is in the best interest of Child. The trial court filed a supplemental opinion on October 5, 2022. As discussed further below, the trial court's supplemental opinion, which is substantially similar to its original opinion, is similarly deficient.

2511(a) provides grounds for the involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). *See id*. § 2511(b). This Court need only agree with one of the grounds set forth in subsection (a) to affirm, provided subsection (b) is also satisfied. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

Here, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). As we need only agree with the trial court's determination as to any one section of 2511(a), we limit our discussion to sections 2511(a)(8) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> * * * *
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant

- 6 -

to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

Unlike other subsections, section 2511(a)(8) does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children. *In re M.A.B.*, 166 A.3d 434, 446 (Pa. Super. 2017). The relevant inquiry for the second prong of section 2511(a)(8) is whether the conditions that led to removal have been remedied, and thus whether reunification of parent and child is imminent at the time of the hearing. *See In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009). Further, the Act prohibits the court from considering, as part of the section 2511(a)(8) analysis, "any efforts by the parent to remedy the conditions described [in the petition] which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b). To satisfy section 2511(a)(8), the petitioner must show three components: (1) that the child has been removed from the care of the parent for at least twelve months; (2) that the conditions which led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa. Super. 2018).

Sections 2511(a)(8) and (b) both require a court considering a termination petition to assess the needs and welfare of the relevant child or children. However, the needs and welfare analysis required by section

2511(a)(8) is distinct from the needs and welfare analysis required by Section 2511(b) and must be addressed separately. *See In re C.L.G*., 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) (noting that "[s]ection 2511(a)(8) explicitly requires an evaluation of the 'needs and welfare of the child' prior to proceeding to [s]ection 2511(b), which focuses on the 'developmental, physical and emotional needs and welfare of the child'").

This Court has recognized "that the application of [section 2511(a)(8)] may seem harsh when the parent has begun to make progress toward resolving the problems that had led to the removal of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006). However,

> by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

*Id*.

With respect to section 2511(a)(8), Father argues that the conditions that led to Child's placement are mostly related to Mother. *See* Father's Brief at 17. Father admits that his "protective capacity" was called into question due to his failure to report Mother's abuse, but he asserts that CYS addressed this concern through the parenting class and referral to a non-offender's

program. *Id*. at 17-18. Finally, he claims that he agreed to have Mother vacate the residence and that there is nothing to indicate that he is a danger to Child. *See id*. at 18.

The trial court considered Father's issue and determined it lacks merit:

> [Child] ha[d] been in foster care for [eighteen] months. Throughout this time in foster care, Father has missed visits on multiple occasions. No evidence was presented that Father can attend to the physical or emotional needs of Child. Additionally, [CYS] attempted on multiple occasions to get proof of employment and proof that Mother was no longer residing in Father's home. Father did not supply the agency with the requested documents. Although Father has visited with Child during Child's young life, he clearly has not shown, in view [of] the efforts of Father in light of the totality of the circumstances, that he has exerted himself to take and maintain a place of importance in . . . [C]hild's life.

Supplemental Trial Court Opinion, 10/5/22, at 6-7 (citations to the record omitted).

Following our review, we discern no abuse of discretion by the trial court. We observe, firstly, that Father does not contest the first prong of the section 2511(a)(8) test, *i.e.*, that the child has been removed from the care of the parent for at least twelve months. *See* Father's Brief at 16. Father challenges the second and third prongs of the section 2511(a)(8) test, namely, that the conditions which led to the removal or placement of the child still exist; and that termination of parental rights would best serve the needs and welfare of the child. *See id*. at 16-17.

Regarding the second prong of the test, the record shows that Father, over the course of 18 months, failed to provide income verification to CYS, did

- 9 -

not complete non-offender counseling, was unresponsive to CYS's efforts to communicate with him, and, crucially, failed to ensure that Mother vacated the residence, despite the fact that CYS communicated to him that reunification could only occur if Mother found another residence, given the allegations of abuse against her in New Jersey. *See* N.T., 4/12/22, at 21, 22, 27-28. 30, 34-35. We further note that when asked directly about whether he wanted to be reunified with Child, Father declined to answer the question and instead referred CYS to Mother. *See id*. at 34-35. The trial court found no evidence that the conditions leading to Child's placement, including Mother's presence in the home, had resolved.[6] Thus, the trial court did not abuse its discretion in finding that the conditions leading to Child's placement still existed.

We likewise cannot conclude the trial court abused its discretion in finding the third prong of 2511(a)(8) satisfied, *i.e.*, that termination of Father's parental rights would best serve the needs and welfare of Child. Ms. Koerner testified that Child has been in her current foster home since late October 2020. *See* N.T., 4/12/22, at 38. Ms. Koerner further testified that Child, despite "a mild speech delay," is "walking, she's babbling, she's very

---

[6] Reunification was therefore clearly not imminent at the time of the hearing. We also observe that, despite notice, Father did not appear for the termination of parental rights hearing. *See* N.T., 4/12/22, at 38. Father did not even contact his counsel prior to the hearing; accordingly, counsel could not state Father's position on the record. *See id.* at 49.

bonded, and very much in love with her foster mothers." *See id*. at 38. Child's foster parents desire to be a permanent resource for her. *See id*. at 38-39. Ms. Koerner, who observed Child with her foster parents on multiple occasions, opined that "whenever she's nervous about anything[,] she runs to her foster mothers. Very loving[;] she has plenty of room to search. They're involved with her. They take her camping. I know they're looking into having activities for her, maybe dance classes. [Y]ou can tell how bonded [they are;] she does not like to leave their side." *Id*. at 39.[7] The trial court thus acted within its discretion in finding grounds for termination under section 2511(a)(8), because Child has been removed from Father's care in excess of the twelve-month statutory minimum; the conditions which led to Child's removal continue to exist; and termination would best serve the needs and welfare of Child.[8]

---

[7] Ms. Koerner testified that Child recognizes Father and is comfortable with him. *See* N.T., 4/12/22, at 40.

[8] In his brief, Father cites to *In re C.B.*, 230 A.3d 341 (Pa. Super. 2020) in support of his claim that Mother's alleged child abuse was only indirectly connected to him and should not have served as grounds for termination of his parental rights. *See* Father's Brief at 16-18. In *C.B.*, we held that pending criminal charges against a parent do not "*automatically* result in termination of parental rights," but instead, the trial court must "assess whether the parent appreciates the harm caused and understands the wrongfulness of the conduct or whether there will likely be a reoccurrence of the behavior and conduct" (emphasis in original). The trial court here could conclude that Father failed to appreciate and address the potential danger Mother posed to Child.

Father next argues the trial court abused its discretion in finding that termination of his parental rights was in Child's best interests under section 2511(b). **See** Father's Brief at 20. With respect to section 2511(b), we consider whether termination of parental rights will best serve the child's developmental, physical and emotional needs and welfare. **See In re Z.P.**, 994 A.2d 1108, 1121 (Pa. Super. 2010). The parent-child bond is a "major aspect of the needs and welfare analysis," and the court must pay "close attention . . . to the effect on the child of permanently severing any such bond." **Interest of J.R.R.**, 229 A.3d 8, 12 (Pa. Super. 2020) (internal citation and quotations omitted). Severing "close parental ties is usually extremely painful," and, accordingly, "[t]he court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." **Id**. at 13 (internal citation and quotations omitted). Further, "[i]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." **In re A.S.**, 11 A.3d 473, 483 (Pa. Super. 2010). "Above all else . . . adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." **In re Z.P.**, 994 A.2d at 1121 (internal citation and quotations omitted).

While the existence of a bond between a parent and child will not *per se* block a termination of rights, it is nevertheless a factor that the trial court must consider. **See In re E.M.**, 620 A.2d 481, 485 (Pa. 1993). Where a trial court fails to fully explore the emotional needs of a child under section 2511(b), this Court may vacate a decree terminating parental rights. **See, e.g.**, **Interest of J.R.R.**, 229 A.3d at 13, 14 (vacating a decree terminating parental rights where the trial court failed to engage in a proper section 2511(b) analysis). This Court has noted that it "has in the past reversed and remanded termination cases in which the child welfare agency failed to present sufficient evidence concerning the presence or absence of a parent-child bond and the likely effect of its permanent cleavage on the child." **In re S.D.T., Jr.**, 934 A.2d 703, 706 (Pa. Super. 2007) (internal citation and quotations omitted).

Father asserts that the trial court abused its discretion in performing the 2511(b) analysis because, as shown in the visitation notes admitted at the hearing, "[t]here[] [is] no denying that a bond here exists between [F]ather and [Child,]" and therefore, the trial court erred in failing to "hear evidence of how the termination of [his] rights might affect [] [C]hild." Father's Brief at 20-21. Accordingly, Father maintains, the trial court erred in finding that termination of his parental rights was in the best interests of the child under section 2511(b), because there was evidence of a bond, and CYS failed to

show that Child's needs and welfare will be best served by severing that bond. *Id*. at 21.

The trial court considered Father's assertion and determined that it lacked merit. The trial court's entire section 2511(b) analysis consists of the following: "We believe and determine the best interest of the child will be served by termination of parental rights of Father. In the foster home[,] [Child] is doing well. Given that the foster family is providing a stable, protective and loving relationship to [Child], termination of parental rights is warranted." Trial Court Opinion, 10/5/22, at 8.

Following our careful review, we conclude the trial court abused its discretion by failing to properly engage in a section 2511(b) analysis. Here, the trial court failed to mention section 2511(b) in its analysis, and, while the court made general findings of fact about Child's bond with her foster parents, it made no findings of fact about Father's bond with Child and the effect of termination on the Child. Consequently, it failed to fully explore Child's emotional needs. *See* Supplemental Trial Court Opinion, 10/5/22, at 7.[9] *See In re E.M.*, 620 A.2d at 484 (stating that "[w]here there has not been adequate consideration of the emotional needs of the children, a termination of parental rights cannot be sustained"). CYS caseworker Ms. Koerner testified

---

[9] We observe that, at the hearing, Child's GAL also advocated for termination, citing Father's "limited cooperation [and] just doing the visits," but made no argument under section 2511(b). *See* N.T., 4/12/22, at 50.

that Child recognizes Father and is comfortable with him during visits. *See* N.T., 4/12/22, at 40. We further note that CYS's visitation notes show, among other things, the following: Father told Child he loves and misses her and cannot wait to hug her. *See* N.T., 4/12/22, CYS Exhibit 12, p. 37 (3/5/21 visitation notes). Father would talk to child and imitated Mickey Mouse. *See id*. at 45 (3/22/21 visitation notes). Father read to Child. *See id*. at 48 (3/29/21 visitation notes). Father brought a blanket, stuffed animals, and books, joined in Child's play, engaged in appropriate conversation, "calmed [Child] down[] and interacted with her in a great manner," and separated from her in a positive manner. *Id*. at 59 (8/19/21 visitation notes). The August 19, 2021 visitation notes include the following narrative:

> The visit started right at 3 pm. The visit started with [Child] crying. [Father] was trying to calm her down to stop crying. [Father] goes and sits on a chair[,] holding the child. He starts playing [peek-a-boo] to try and get her to stop crying. [C]hild does stop crying. [Father] says, "It is okay [Child], calm down." [Father] begins to rock her like a baby, to get her to be more comfortable with him. . . . [Father] then pulls out a blanket and puts it on the ground, so [C]hild can crawl. [Father] brings out a couple [of] books[] and a stuffed animal monkey. [C]hild throws the monkey. [Father] begins to read [C]hild a book with animals. [C]hild is extremely interested in the book. [Father] continues to read the book to her. Child begins to try and take [Father's] mask off. He starts laughing and says, "Are you trying to get me?" He then gets [C]hild, saying, "I'm going to get you." [Father] takes his hat off and puts it on [C]hild[;] [Father] lifts the stuffed animals [for play.] . . . [C]hild starts crying again, and [Father] is trying to calm her down, by reading more books to her. [Father] puts his hat on [C]hild, and she starts to smile. [Father] starts playing [peek-a-boo] with . . . Child again. She is laughing. . . . [C]hild gives him a high five and laughs. . . . The visit is about to end, so [Father] gives [C]hild a big hug and kisses and says that

he will see her next time. He holds her walking out to the waiting area, and then he separates and goes on his way.

*Id*. at 59-60. Visitation notes from September 2, 16, and 23, 2021, as well as October 7, 14, 21, 2021, and December 9, 2021 all contain similar observations. *See id*. at 64-65, 68, 78-79, 84-86, 91-93, 99-101, 106. The visitation notes indicate Child "was happy to show [Father] her dog" during the December 9, 2021 visit. *See id*. at 106. On January 20, 2022, Child was crying when a case aide handed her to Father, Father then consoled her, and she "calmed down after a couple of minutes." *Id*. at 120. Father read Child a book, counted with her, and tickled her, causing her to laugh; and Child "got upset when [Father] put her down," and, when "[Father] picked her up[,] she stopped crying." *Id*. Father and Child would play catch, and Child "would crack up laughing every time [Father] would [throw] the ball to her." *Id*. On January 27, 2022, Father comforted Child when she was crying, after which she ceased crying; he read books to her, said a prayer with her and explained the meaning of it to her; Child "did not want to get off his lap. If [he] tried to put [her] down, she would cry." *Id*. at 122. *See also id*. at 125 (visitation notes from February 3, 2022 describing play between Father and Child, and Child "cracking up," dancing, and laughing); *id*. at 131 (visitation notes from March 3, 2022 describing, *inter alia*, play between Father and Child); *id*. at 134 (visitation notes from March 12, 2022 indicating that Child was crying and would not let the case aide take her, but she let Father "pick her[] up[;] she was still crying[,] but [Father] consoled her, and she stopped crying"); *id*. at

137 (visitation notes from March 17, 2022 describing Child as "crying until she saw [Father], [after which she] stopped crying," and later played catch with Father). Notwithstanding this evidence of record, CYS presented no other evidence at the hearing about whether there is a bond between Father and Child, and if so, how severing that bond would affect Child.

Accordingly, based on this record, including the evidence discussed *supra*, we conclude that the trial court abused its discretion in failing to consider whether a bond exists between Child and Father, and whether termination of Father's parental rights would destroy an existing, necessary, and beneficial relationship. *See Interest of J.R.R.*, 229 A.3d at 12-13 (vacating a decree involuntarily terminating parental rights where the trial court failed to conduct a proper section 2511(b) analysis). Thus, we vacate the decree involuntarily terminating Father's parental rights and remand the case for the trial court to hear additional evidence relevant to the 2511(b) analysis, including, *inter alia*, whether a bond exists between Father and Child, and if so, the effect on Child of severing that bond, and to thereafter conduct a proper analysis pursuant to 23 Pa.C.S.A. § 2511(b).

Decree vacated. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/13/2022</u>