J-S08015-20

2020 PA Super 59

| IN RE: C.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: BLAIR COUNTY | : | |
| CHILDREN, YOUTH AND FAMILIES | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1487 WDA 2019 |

Appeal from the Order Entered September 5, 2019
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2018 AD 40

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

OPINION BY OLSON, J.:                                   **FILED MARCH 13, 2020**

Appellant, Blair County Children, Youth and Families, appeals from the order entered September 5, 2019, denying Appellant's petition for involuntary termination of the parental rights of B.M.M. ("Mother") to her dependent child, C.B., a female child born in May 2017, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511.[1]   We affirm without prejudice to Appellant seeking termination of Mother's parental rights at a later date.

The trial court set forth the following:

The subject child in this case, [C.B.], was born [in] May []2017. [Appellant] took custody of the child on July 10, 2017.  The child was adjudicated dependent on September 14, 2017.  The child was placed in foster care after release from the hospital and eventually was placed with T.M., the child's paternal grandmother. [The incident that precipitated Appellant's involvement with the

_____

[1] On May 17, 2019, the trial court terminated the parental rights of C.B.'s biological father, T.M.B. ("Father"), after Father voluntarily relinquished his parental claim to C.B.  Trial Court Final Decree, 5/17/19.

family concerned a specific incident of abuse for which Father] was eventually charged with serious criminal offenses. [During the incident, Father was alleged to have violently shaken C.B.[2]] []Mother[] was also charged with recklessly endangering another person and endangering the welfare of a child[3] for her failure to seek medical treatment for [C.B. following the incident involving Father]. Dependency proceedings preceded through the Court of Common Pleas [of Blair County].

On November 14, 2018, [Appellant] filed a [p]etition for [t]ermination of [p]arental [r]ights [("petition")]. Tyler Rowles, Esquire was appointed counsel for the child and guardian *ad litem* counsel. The parents were provided an opportunity to object to Attorney Rowles serving as guardian *ad litem* counsel and counsel for the child. No party objected to the appointment. During the course of the proceedings, Attorney Rowles indicated that due to the developmental problems of the child and the child's age, he was confident he could serve in both capacities [without a conflict of interest.[4]]

In [its petition, Appellant] alleged that [termination of] the parental rights of [Mother] are justified pursuant to 23 Pa.C.S.A. [§]§ 2511(a)(2),(a)(5),(a)(8), and (b). In support of [its] position, [Appellant] averred, amongst other things, the details of the facts that gave rise to the criminal charges against the parents and the fact that those charges remained pending. [Appellant] also allege[s] that []Mother does not have a full understanding of [C.B.'s] injuries, that she has not taken responsibility for the injuries, and that she has not established that she can care for the child. [Appellant] also avers that []Mother does not have independent and stable housing and that she does not have stable

---

[2] The record demonstrates that Father admitted to violently shaking C.B.; this action ultimately led Appellant to seek the removal and placement of C.B. Appellant's Application for Emergency Protective Custody, 7/11/17. Father pled guilty to aggravated assault, endangering the welfare of a child, simple assault, recklessly endangering another person, and harassment. 18 Pa.C.S.A. §§ 2702(a)(1), 4304(a)(1), 2701(a)(1), 2705, and 2709(a)(1), respectively; **see also** N.T., 2/19/19, at Petitioner's Exhibit 4.

[3] 18 Pa.C.S.A. §§ 2705 and 4304(a)(1), respectively.

[4] N.T., 12/6/18, at 1-4.

income. [Appellant] also assert[s] that the child is progressing well in the care of [T.M.].

The [trial c]ourt conducted several evidentiary hearings on [Appellant's p]etition. These hearings occurred on December 6, 2018, February 19, 2019, March 28, 2019, May 7, 2019, and August 14, 2019.

Trial Court Opinion, 11/8/19, at 1-2.

Several witnesses testified at these proceedings[; s]pecifically, T.M., []Dr. Terry O'Hara, [Appellant's] case worker Kierstin Whysong, [Appellant's] case aide Stephanie Barton and [Mother.]

T.M. provided several updates on her care of [C.B.,] as well as the child's progress. She testified at numerous hearings. Her testimony established that the child remains at a zero to three[-]month developmental stage. However, the child has shown some progress in certain areas. The testimony established that T.M. has a bond with the child and the child recognizes and responds to her. In light of the child's age and developmental stage, it is difficult to acquire evidence regarding the child's bonds with certain individuals. It seems that T.M.'s testimony establishes that the child reacts more to individuals that she has a history with and with individuals [whose voices she is able to recognize]. T.M. testified that she communicates with [Mother] and provides her updates on the child's health and doctors appointments. She indicated that []Mother responds to her updates and is receptive to communication with her. T.M. explained that she has learned how to care for the child by learning from the foster parents and due to her own research and experience with the child and the child's physicians.

[Appellant] presented the testimony of Kierstin Whysong, a case worker[,] and the testimony of Stephanie Barton, a case aide. This testimony was utilized to explain [Appellant's] position on the [petition] and to provide background on the child, T.M.'s involvement with the child, and [Mother's] progress. This testimony established several positives regarding []Mother. The testimony established that []Mother has been compliant with treatment recommended by [Appellant]. []Mother completed the Circles of Security Program through Kids First and has been cooperative with the United Way Parent Education Program. []Mother has also engaged in drug and alcohol treatment.

[]Mother is also compliant with her visits regarding [C.B.] except when those visits had to be rescheduled for []Mother's work or unavailability. [Appellant's witnesses] also expressed various concerns about reunification. [Appellant's] witnesses indicated that []Mother's expectations of [C.B.] moving forward were not realistic. They also stated that []Mother did not have independent housing or stable employment. They raised concerns about []Mother's attentiveness to the child during visits and her ability to care for the child in the future. In addition, a large portion of [Appellant's] expression of concern surrounded the underlying abuse of the child and the fact that []Mother's criminal charges remain pending. During a portion of Ms. Whysong's testimony, she acknowledged that if the criminal charges would be resolved in []Mother's favor, [Appellant] may move forward with reunification. [Appellant's] witnesses present some but not extensive testimony about the bond between the child and []Mother. Ms. Whysong indicated that she [did not attend] visits between []Mother and the child but understood from the aides that the child recognizes []Mother. Ms. Whysong believes that the child was bonded with []Mother during the visits.

Dr. Terry O'Hara, an expert in the field of forensic psychology[,] testified at the evidentiary hearing. Two reports of Dr. Terry O'Hara were placed into evidence[; s]pecifically, a report dated November 8, 2017[,] and a report dated February 22, 2018. Dr. O'Hara's testimony at the evidentiary hearing preceded the second evaluation on February 22, 2018. Dr. O'Hara explained during his testimony that he was unable to complete an interactional evaluation due to the criminal charges against []Mother. Dr. O'Hara's testimony at the initial hearing was rather speculative in light of his inability to do the interactional evaluation at that time. However, Dr. O'Hara indicated that []Mother had been compliant with treatment and that she had denied any issues with domestic violence or psychiatric hospitalizations. The doctor also concluded that []Mother had an average IQ. The doctor felt that further evaluation of []Mother would be needed after disposition of her criminal charges so that he could assess her involvement in the criminal activity and assess what impact that would have on her parenting ability moving forward. [Appellant] asked Dr. O'Hara if he believed that independent housing would be a concern for []Mother's ability to care for the child and the doctor concluded that that would depend on the stability of the household where she would reside.

*Id.* at 4-6.

On September 5, 2018, the trial court denied Appellant's petition finding that Appellant had "failed by clear and convincing evidence to prove any of the applicable sections pursuant to 23 Pa.C.S.A. § 2511." Trial Court Order, 9/5/19. This appeal followed.[5]

Appellant presents the following issues for our review:

1. Whether the trial court erred and/or abused its discretion in concluding that [Appellant] did not meet its burden of proof by clear and convincing evidence to terminate the parental rights of [Mother] pursuant to 23 Pa.C.S.A. § 2511(a)(5)?

2. Whether the trial court erred and/or abused its discretion in concluding that [Appellant] did not meet its burden of proof by clear and convincing evidence to terminate the parental rights of [Mother] pursuant to 23 Pa.C.S.A. § 2511(a)(8)?

3. Whether the trial court erred and/or abused its discretion in concluding that [Appellant] did not meet its burden of proof of clear and convincing evidence to terminate the parental rights of [Mother] pursuant to 23 Pa.C.S.A. § 2511(b)?

Appellant's Brief at 4.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and

---

[5] On October 1, 2019, Appellant filed a concise statement of errors complained of on appeal with its notice of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court subsequently filed its Rule 1925(a) opinion on November 8, 2019.

credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under Section 2511, the [trial] court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). **Only if** the [trial] court determines that the parent's conduct warrants termination of his or her parental rights does the [trial] court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the

standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re B.J.Z.*, 207 A.3d at 921 (citation omitted, emphasis added). We have defined clear and convincing evidence as that which is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Z.P.*, 994 A.2d 1108, 1116 (Pa. Super. 2010) (citation omitted).

Here, while the trial court found Appellant failed to provide clear and convincing evidence to prove **any** of the grounds for termination of parental rights under Section 2511(a), Appellant appeals only the trial court's determination under Sections 2511(a)(5) and (a)(8). Appellant's Rule 1925(b) Statement, 10/1/19; *see also* Appellant's Brief at 4. Therefore, Appellant waives any claims under the remaining subsections of Section 2511(a). *In re L.V.*, 209 A.3d 399, 413 (Pa. Super. 2019) (stating, failure to preserve issue in Rule 1925(b) statement or statement of questions presented in brief results in waiver of issue).

Sections 2511(a)(5), (a)(8), and (b), provide as follows:

### § 2511. Grounds for involuntary termination

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency

for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

**(b.)** **Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(5), (a)(8), and (b).

This Court, in discussing the grounds for termination of parental rights

under Sections 2511(a)(5) and (a)(8), stated,

Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. 23 Pa.C.S.A. § 2511(a)(5). "To terminate parental rights

pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275–[12]76 (Pa. Super. 2003); 23 Pa.C.S.A. § 2511(a)(8). "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003). Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of [Children & Youth Services ("CYS")] supplied over a realistic time period. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of [CYS] services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa. Super. 2003); *In re Adoption of M.E.P.*, *supra*.

*In re Z.P.*, 994 A.2d at 1118 (original brackets omitted).

Under Section 2511(a)(8), in determining whether the conditions that led to removal and placement continue to exist, "[t]he relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.E.P.*, 87 A.3d 340, 345 (Pa. Super. 2014) (citation and original quotation marks omitted).

The application of Section [2511](a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate

indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.

*Id.* at 345-346 (citation and original brackets omitted).

With respect to the "needs and welfare" analysis pertinent to [Sections] 2511(a)(8) and (b), we have observed:

Initially, the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child. However, Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on the "developmental, physical and emotional needs and welfare of the child." Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent. Moreover, **only** if a court determines that the parent's conduct warrants termination of his or her parental rights, pursuant to Section 2511(a), does a court "engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." Accordingly, while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), **prior to addressing** the "needs and welfare" of the child, as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*Id.* at 346 (citation and original brackets omitted, quotation marks in original, emphasis added).

Statutory and case law contemplates that either reunification or adoption for a child occur within 18 months of removal and placement. *In re I.J.*, 972 A.2d 5, 12 (Pa. Super. 2009) (citation omitted). A parent's affirmative duty to meet the needs of a child "encompasses more than a financial obligation; it requires continuing interest in the child and a genuine

effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself [or herself] to take and maintain a place of importance in the child's life." *In re Z.P.*, 994 A.2d at 1119 (citation omitted).

Here, the record demonstrates that the specific incidents necessitating the removal and placement of C.B. were allegations of child abuse stemming from Father's admitted shaking of C.B. and both parents' failure to seek immediate medical attention for C.B. Appellant's Petition, 11/14/18, at ¶6(c); *see also* Appellant's Application for Emergency Protective Custody, 7/11/17, at 3 (stating, "[d]ue to the doctor's suspicion of child abuse, [C.B.] could not ret[ur]n to her parents"), Trial Court Opinion, 11/8/19, at 2 (stating, "[i]n support of [its petition, Appellant] averred, amongst other things, the details of the facts that gave rise to the criminal charges against parents and the fact that those charges remained pending [at the time the petition was filed]"). The allegations of child abuse ultimately led to criminal charges being filed against Mother, which remained pending at the time the petition was filed but were resolved prior to closure of the evidentiary record.[6] Trial Court Opinion, 11/8/19, at 13.

Appellant contends that "when [it] got to the point of [C.B.] being in placement for 15 months, [Appellant] was compelled to file [a petition]."

---

[6] The record demonstrates that Mother, as part of her plea agreement, was sentenced to an aggregate 2 years' probation and required, among other things, to comply with all directives of Appellant. N.T., 8/14/19, Petitioner's Exhibit 3.

Appellant's Brief at 19. Appellant argues that at the time the petition was filed, Mother had not resolved her criminal case. *Id.* at 19-20. Appellant also argues Mother still had contact with Father, did not have independent housing, only obtained employment after the petition was filed, and had not participated in a non-offenders treatment program. *Id.* at 20-21. Appellant contends Mother failed to remedy the conditions that necessitated removal and placement of C.B. prior to the filing of the petition, and at the initial hearing on the petition, C.B. had been in placement for 17 months. *Id.* at 19-21. Appellant avers it did not start the reunification process prior to filing the petition because Mother's bail conditions required fully supervised visitation and because Appellant's expert witness, Dr. O'Hara, was unable to recommend reunification based on Mother's refusal to discuss anything relating to the incident that caused C.B.'s injuries. *Id.* at 19. Appellant contends it provided clear and convincing evidence that satisfied the requirements for termination of Mother's parental rights under Sections 2511(a)(5) and (a)(8) and that Mother "presented no evidence that she can care for a child with such significant needs." *Id.* at 16, 21. C.B., through her guardian *ad litem*, joined Appellant's argument in support of termination of Mother's parental rights. C.B.'s Brief at 4.

Mother contends Appellant did not prove the requirements for termination of her parental rights by clear and convincing evidence but, rather, supported its petition for termination with evidence based on speculation and conjecture in an attempt to shift the burden of proof to

Mother. Mother's Brief at 1. Mother argues that she complied with Appellant's training and treatment requirements, that her housing situation remains a concern only because Appellant lacks information and has not visited Mother's home, that once Mother obtained employment Appellant raised concerns about how she will provide childcare and continue to work, and that she resolved her criminal case. *Id.* at 5-7.

A review of the record demonstrates that 16 months elapsed from the time C.B. was removed from Mother's parental care in July 2017 to November 2018 when Appellant filed the petition.[7] Therefore, the first requirements of both Sections 2511(a)(5) and (a)(8) were satisfied.

As to the second requirements under Sections 2511(a)(5) and (a)(8), Appellant was required to demonstrate by clear and convincing evidence that **the conditions which led to the removal and placement of the child** continued to exist at the time the petition was filed. *See In re Z.P.*, 994 A.2d at 1118. The analysis of whether the second requirements under Sections 2511(a)(5) and (a)(8) have been satisfied differs only in that Section 2511(a)(5) permits the trial court to consider the parent's current willingness and ability, within a reasonable time, to resolve the condition, that led to the removal and placement of the child, while Section 2511(a)(8) does not permit such a consideration. *Id.*

---

[7] We note that when the trial court closed the record in this matter in August 2019, C.B. had been in placement for 25 months.

Here, the trial court gave "little weight to several of [Appellant's] allegations against []Mother." Trial Court Opinion, 11/8/19, at 9. Specifically, the trial court found Appellant failed to present credible evidence as to why Mother's housing conditions, employment status, or contact with Father, who was incarcerated for "a lengthy prison term," supported termination of Mother's parental rights. *Id.* at 9-11. These factors might justify termination but they are not the factors that led to the removal and placement of C.B. in the case *sub judice*. Since these factors did not lead to C.B.'s removal and placement, we concur in the trial court's conclusion that they do not support termination under Sections 2511(a)(5) or (a)(8).

The specific incidents that led to the removal and placement of C.B. were the allegations of child abuse and Mother's failure to seek immediate medical care. In examining whether these specific incidents continued to exist at the time the petition was filed, the trial court recognized Appellant's assertion that the underlying abuse and pending criminal charges, as well as the fact C.B. had been in placement for 15 months, justified termination of Mother's parental rights. *Id.* at 12. The trial court, however, concluded that

> [t]aking [Appellant's] position to its logical conclusion would mean that []the [trial c]ourt would have a basis to terminate parental rights when criminal charges are filed against a parent when those criminal charges were awaiting disposition at the fifteen month mark. [The trial c]ourt is aware of no support for that legal conclusion. Nothing in our statutes indicate that the underlying abuse or the pendency of charges of this nature alone support the automatic termination of parental rights.

- 14 -

*Id.* at 12. The trial court found that Appellant failed to establish "any explainable nexus between the fact that the criminal charges remained pending and the termination of parental rights other than the simple conclusion that the resolution of the charges have not occurred within a specified timeframe." *Id.* at 13.

Confronted with these unique circumstances,[8] we must determine whether evidence of the pendency of criminal charges, which are the direct consequence of the specific incidents that led to the removal and placement of the child, in itself, satisfies the second requirements of either Section 2511(a)(5) or Section 2511(a)(8) when the criminal charges remain pending at the time the petition is filed.

In addressing this issue, we are guided by this Court's prior conclusion that evidence of the "incarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; [the parent] must act affirmatively, with good faith interest and effort, to maintain the parent-child

_____

[8] Here, what led to the removal and placement of C.B. was specific incidents of behavior or conduct by Mother that were episodic in nature. These specific incidents were single occurrences that, while they could not be undone, were not on-going. The analysis of the second requirement for termination under either Section 2511(a)(5) or Section 2511(a)(8) is concerned with whether **the conditions**, implying a situation that is on-going (*i.e.* unable to provide adequate food for child), that led to the removal and placement of the child continued to exist at the time the petition was filed. Because of Mother's pending charges and the concern with Mother's self-incrimination, Dr. O'Hara was not able to perform an assessment of Mother. As a result, Dr. O'Hara was not able to reach a conclusion as to whether her conduct would reoccur or if she understood the significance of her actions and omissions with regard to the care of C.B.

- 15 -

relationship to the best of his or her ability, even in difficult circumstances."

***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citations omitted); ***see also In re C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*) (stating, "[i]ncarceration alone is not sufficient to support termination under **any** subsection [of Section 2511(a)]" (emphasis added, citation omitted)). We find the pendency of Mother's criminal charges, which resulted from allegations of child abuse and the failure to seek immediate medical care, together with Mother's restricted visitation with C.B. due to the conditions of her bail, akin to the circumstances and limitations of an incarcerated parent. Evidence of a parent's pending criminal charges, in itself, does not justify termination of parental rights under either Section 2511(a)(5) or Section 2511(a)(8). In order to satisfy the second requirement of either Section 2511(a)(5) or Section 2511(a)(8), clear and convincing evidence must demonstrate the parent failed to adequately maintain the parent-child relationship taking into consideration the unique circumstances of the parent's pending criminal charges that were the direct result of the specific incidents that led to the removal and placement of the child.

Here, the trial court found, and the record supports, that prior to the filing of the petition

> Mother participated in and completed every parenting class and treatment recommended by [Appellant]. The record established that []Mother was compliant with drug and alcohol treatment, completed a Circles of Security Program, and was compliant with parent education. There was no credible evidence of any continued drug use and no evidence that []Mother failed to remain compliant with her visits with [C.B.]. [Appellant] presented no

- 16 -

explanation for why they did not increase []Mother's visitation with [C.B.] or activities with the child. While [the trial c]ourt has general familiarity with the criminal orders that were placed against []Mother, [Appellant] never made the details of these [o]rders part of the record of this proceeding. [The trial c]ourt does not recall any [o]rders that would have prevented [Appellant] from increasing the periods of contact between []Mother and [C.B.] to further ascertain []Mother's abilities. The criminal [o]rders also did not prevent [Appellant] from moving forward on any additional services for []Mother that would have further permitted her to maintain her parental rights. These [o]rders did not prevent a bonding assessment being done by Dr. O'Hara or any increased community services that would have helped maintain the mother/daughter relationship.

Trial Court Opinion, 11/8/19, at 11. In discussing the pendency of the criminal charges, the trial court stated,

There can be numerous reasons why criminal charges may be delayed or why a criminal case may take some time to proceed to trial. There were serious criminal charges pending against []Father and []Mother's case was joined with []Father's case. There were pretrial motions filed and the criminal practitioners were actively involved in discussions about the timing of trial. [Appellant] did not present any specific facts to suggest the delay of the criminal charges should be attributed to []Mother. The record reveals that []Mother's criminal charges were resolved prior to [the closure of the] evidentiary record[]. Nonetheless, [Appellant] did not request any further evaluations or treatment of []Mother at that point. This is despite the fact that [Appellant's] witnesses indicated during the pendency of the [petition] that other options would be considered (including reunification) if the criminal charges were resolved [in Mother's favor. Appellant] never explained why [its] position changed when the criminal charges were resolved during the pendency of the [petition] and prior to the final closing of the record. [Appellant] also never explained why [it] did not request an additional evaluation with Dr. O'Hara.

*Id.* at 13-14.

There would be a great deal of irony in the law if pending criminal charges could support the termination of parental rights under Section 2511(a) while actual incarceration (and, obviously, conviction) does not, in itself, support termination of parental rights. It is not a foreign concept in Pennsylvania law that certain proceedings should or must be deferred where criminal charges are pending. *See Spanier v. Freeh*, 95 A.3d 342, 345 (Pa. Super. 2014) (recognizing trial court's ability to stay civil proceedings until criminal charges resolved if appropriate six-factor balancing test satisfied). It is not our intent to suggest that a child's life be held in abeyance while the criminal charges are resolved but, rather, to find that the pendency of criminal charges, in itself, does not **automatically** result in termination of parental rights. Moreover, the adjudication of one's guilt in charges stemming from allegations of child abuse is not necessary to assess whether the parent appreciates the harm caused and understands the wrongfulness of the conduct or whether there will likely be a reoccurrence of the behavior and conduct. *See Commonwealth v. Brown*, 26 A.3d 485, 508 (Pa. Super. 2011) (holding, "a psychiatrist [is permitted] to presume a juvenile's guilt in determining amenability to treatment").

Based upon the record currently before us, the record supports the trial court's determination that Mother complied with Appellant's requirements for reunification and maintained a relationship with C.B., albeit constrained by fully supervised visitation, during the pendency of her criminal charges. Appellant failed to present clear and convincing evidence that Mother's

- 18 -

behavior and conduct would reoccur or that she did not understand and take responsibility for the actions and omissions that led to the pending criminal charges. While her criminal charges remained pending, Mother acted affirmatively to adequately maintain the parent-child relationship with C.B, given her unique circumstances. Therefore, we find no error in the trial court's determination that the pendency of the criminal charges, which were not filed until sometime after the occurrence of the specific incidents that led to the removal and placement of C.B., did not – by themselves – support termination. Consequently, Appellant failed to establish grounds justifying termination of Mother's parental rights pursuant to either Section 2511(a)(5) or Section 2511(a)(8).[9]

---

[9] The record demonstrates the trial court analyzed the needs and welfare of C.B. under Section 2511(b)'s best interest of the child standard where the focus is on the child but did not analyze the needs and welfare of C.B. under Section 2511(a). The trial court's failure to perform a needs and welfare analysis under Section 2511(a), however, constitutes no grounds for reversible error in the case *sub judice* because the record supports the trial court's conclusion that Appellant failed to present clear and convincing evidence of the second requirements of the either Section 2511(a)(5) or Section 2511(a)(8). We remind the trial court that before determining the needs and welfare of the child under the standard of best interest of the child pursuant to Section 2511(b), the third requirements of both Sections 2511(a)(5) and (a)(8) require the trial court to evaluate the needs and welfare of the child with a focus on the parent and the parent's behavior, taking into consideration, among other things, the parent-child bond and intangibles such as love, comfort, security, and stability. *See In re I.E.P.*, 87 A.3d at 346; *see also In re I.J.*, 972 A.2d at 12.

Order affirmed without prejudice to Appellant seeking termination of Mother's parental rights at a later date where a fuller record could be developed given the resolution of Mother's criminal charges.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/13/2020